### POST v. HUDSON RIVER TEL. CO.

(Supreme Court, Appellate Division, Third Department. November 12, 1902.)

1. TELEPHONE POLE ADJOINING STREET—ENJOINING MAINTENANCE—CONSTRUCTION OF DEED.

Deeds of a lot of land to plaintiff's predecessor in title described it as bounded on the east by the "west side of M. street." The deed from him to plaintiff described it as bounded on the east "by M. street." The sidewalk in front of the lot was 10 feet wide, and on its outer edge, and about a foot from the southerly line of the lot, defendant had erected a telephone pole. *Held*, that plaintiff's title only extended to the west line of the street, and he could not enjoin the maintenance of the pole where it was.

2. SAME—INJUNCTION PENDENTE LITE.

Plaintiff, who cut down a telephone pole after it had stood in its location for some 12 years,—5 of them after plaintiff acquired title to the adjoining lot,—could not claim the right to an injunction pendente lite restraining the company from replacing the pole, on the ground that he was merely seeking to preserve the status quo; he having himself destroyed the status quo.

Appeal from special term, Greene county.

Action for an injunction by Amos Post against the Hudson River Telephone Company. Order refusing to vacate an injunction granted pendente lite, and defendant appeals. Reversed.

The plaintiff is the owner of a lot situated on the westerly side of Main street, in the village of Catskill. The sidewalk in front of such premises on Main street is about 10 feet wide. Upon the outer edge of such walk, and about a foot from the southerly line of such lot, projected into the street, the defendant had erected and maintained for about 12 years a pole about 1 foot in diameter at the base, upon which were strung its telephone wires. The defendant was duly organized as a telephone company in 1883, and the village of Catskill is within the territory specified in its certificate of incorporation. For many years it has, with the consent of such village authorities, conducted its business in such village. The plaintiff obtained title to the lot above referred to from William H. Russ by conveyance dated May 3, 1897. The pole continued to stand there until June 4, 1902. On that date the plaintiff caused the base thereof to be cut through, close to the sidewalk, and moved to the south, so that it rested on the adjoining land, and was sustained by the wires strung thereon. Subsequently the defendant attempted to reset the pole in the same place from which the plaintiff had moved it, and the plaintiff began this action to perpetually enjoin it from doing so. An injunction pendente lite was granted by the county judge of Greene

county, and the defendant made a motion at a special term of this court for an order vacating the same. Such motion was denied, and from the order so made this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

John A. Delehanty, for appellant.

Percy W. Decker, for respondent.

PARKER, P. J. Unless the plaintiff is the owner of the land upon which the defendant seeks to place the pole in question, he is not entitled to any injunction against the defendant's doing so. There is no pretense that such pole, so placed, would interfere with his full enjoyment of light, air, or access to his adjoining lands. It would not be an unlawful obstruction to the highway, because it has the sanction of the legislature of the state and of the village authorities. Unless it is an unlawful invasion or trespass upon his own lands, it is clear that the plaintiff is not entitled to injunctive relief. I do not consider the question whether, even if it were such a trespass, he would be entitled to such relief, nor the further question whether such a company may not, in an incorporated and populous village, maintain such a pole in the street without acquiring the rights of an adjacent owner therein, because I am of the opinion that the threatened action of the defendant in this case would not invade any of the plaintiff's rights. It would not be a trespass upon his lands, because he does not own the place upon which the pole is to be located. The plaintiff's deed from Russ, his immediate grantor, bounds the lot in question on the "east by Main street." If Russ owned to the center of Main street, then such a description would transfer the land to the center. But if Russ did not then own any further east than the west side of Main street, then the plaintiff could not acquire from Russ the ownership of any land east of such west line. Now it appears from the abstract of title used as one of the moving papers in the court below that the conveyance by which Russ acquired his title to this lot bounded it on the east by the "west side of Main street," and that same description is contained in the seven successive conveyances by which the title has been transferred to Russ from Erastus Beach, who appears to have owned the premises in 1817. Thus it appears very clearly that the lot which Russ conveyed to the plaintiff as being bounded east by Main street did not extend to the center of the street, because the title through which he acquired it extended no further than the west side of that street. In other words, the plaintiff, although an adjacent owner, does not own any further east than the west line of Main street, and hence the placing of the pole would not be any encroachment whatever upon his lands.

The plaintiff's counsel, upon the argument, suggests that it does not appear where the west line of Main street was in 1817, nor by whom the street itself was owned, and he insists that such question should not be determined upon this motion; that the plaintiff was in possession of the spot where the defendant seeks to place the pole; and that by this preliminary injunction he is but seeking to preserve the situation in statu quo, and the question of ownership should not be tried

on affidavits. That claim, however, is not precisely accurate. When the plaintiff took title to his lot, the defendant had its pole upon the place in question, and had maintained it there for some years. Also for some five years thereafter, and up to June 4, 1902, it had possession of such place. The plaintiff then cut off the pole, and for the first time took possession to himself. Now, when the defendant seeks to regain that possession, the plaintiff asks the aid of a court of equity to maintain the "status in quo." The defendant's equity, so far as that question is concerned, is certainly the better one. From the record before us, it seems that the plaintiff has neither title nor right of possession to the place from whence he removed the pole. Had he brought ejectment in court, instead of obtaining it by force, he would have failed upon such a title as this record shows. This injunction should not be maintained upon the possibility that he had a better title.

It is unnecessary to examine the other questions raised by the appellant's attorney. For the reasons above stated, the order appealed from must be reversed, and the injunction vacated.

Order reversed, with $10 costs and disbursements. All concur.